UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 14-30020 |
| **LESHAWN STANBRIDGE,** | ) ) ) | |
| Defendant. | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

In the Motion to Suppress Evidence (d/e 9) now before the Court, Defendant LeShawn Stanbridge seeks to exclude all evidence resulting from a traffic stop in Quincy, Illinois, that eventually led to his May 2014 indictment on one count of conspiracy to distribute controlled substances and one count of possession of controlled substances with intent to distribute. Stanbridge contends that police officers did not have probable cause to initiate the traffic stop because he had not committed any traffic violations. Stanbridge also contends that he did not voluntarily consent to a search of his vehicle. For these reasons, Stanbridge asserts that evidence found during the traffic stop and subsequent search should be

suppressed as fruit of the poisonous tree. Because Stanbridge's improperly signaled turns gave police officers probable cause to initiate the traffic stop and because the officers did not unreasonably prolong the stop when they called in investigative drug-sniffing dogs, Stanbridge's Motion is DENIED.

I. **FACTUAL BACKGROUND**

On April 7, 2014, Quincy Police Officer Steve Bangert and Paul Hodges were on routine patrol when they observed Defendant LeShawn Stanbridge approach a white Crown Victoria carrying a green duffel bag. Both officers report that Stanbridge "froze with a surprised look on his face" when he saw the officers in their unmarked police car. After Stanbridge did not immediately get into the Crown Victoria, the officers decided to set up surveillance, driving around the block and returning "several minutes later." At this point, Stanbridge had entered the Crown Victoria and was in the driver's seat. Shortly after the officers' return, Stanbridge began driving westbound. The officers followed Stanbridge, with Officer Bangert driving. Soon thereafter, Officer Hodges alone observed Stanbridge make a right turn onto 4th Street and a left turn without a proper turn signal onto Delaware. Officer Hodges

described the left turn onto Delaware as follows: "When I saw him he was approximately in the middle of the intersection, in the process of making his turn. There was no turn signal being used on the vehicle." Officer Hodges did not tell Officer Bangert that Stanbridge's turn had not been properly signaled. But both officers then observed Stanbridge pull to the right-hand curb abruptly while simultaneously using his right turn signal, an act which both officers believed to be a traffic violation because Stanbridge had not signaled for at least 100 feet before pulling to the curb. See 625 Ill. Comp. Stat. 5/11-804 (2012). Officer Bangert, the driver, initiated a traffic stop. When Officer Bangert turned on the police car's emergency lights, he triggered a 90-second return on the police car's dashboard camera, automatically capturing and saving video footage of what the officers saw through their front windshield leading up to and during the traffic stop.

During the stop, the officers saw that Stanbridge was alone in the car, and they saw a green duffle bag on the passenger seat. Upon collecting Stanbridge's license and vehicle registration information, the officers returned to the car, where they learned from dispatch that Stanbridge was a valid driver but had prior

felony drug convictions. The officers requested a K9 unit and began writing a warning ticket for Stanbridge. The K9 unit showed up at the scene and completed a sniff-search of Stanbridge's vehicle "within fifteen minutes of the initial stop." The dog gave a "very obvious positive alert on the vehicle," which the officers' dashboard camera captured. The officers then searched the vehicle. Officer Hodges checked the green duffle bag and noticed the smell of marijuana coming from the bag. He opened the bag to find a small lockbox with a strong odor of unburnt cannabis coming from the keyhole. After Stanbridge said he did not have a key, the officers pried open the lockbox to find cannabis, hydrocodone, digital scales, and crystal methamphetamine.

Subsequently, Stanbridge was indicted on May 8, 2014, for one count of conspiracy to distribute 500 grams or more of mixtures or substances containing methamphetamine and one count of possession with intent to distribute 50 grams or more of mixtures or substances containing methamphetamine. Documents produced to Stanbridge in pretrial discovery detail the search of Stanbridge's car and the seizure of methamphetamine, hydrocodone pills, and cannabis. Pretrial discovery also discloses Stanbridge's

post-arrest statements that allegedly establish a conspiracy to distribute methamphetamine existing from November 1, 2013, until his arrest on April 7, 2014.

Stanbridge filed the present Motion to Suppress Evidence on the ground that Officers Bangert and Hodges did not have probable cause to initiate the traffic stop because Stanbridge had committed no traffic violations. Stanbridge also asserts that he did not give consent to the search of his vehicle. Stanbridge filed the present Motion to Suppress Evidence on October 7, 2014, and on November 26, 2014, the Court held an evidentiary hearing, from which this statement of the case's factual background is derived.

## II. ANALYSIS

### A. Officers Bangert and Hodges had probable cause to stop Stanbridge for his traffic violations.

A police officer may stop a vehicle when he has probable cause to believe a traffic violation occurred. Whren v. United States, 517 U.S. 806, 809–10 (1996) (affirming trial court's finding of probable cause for traffic stop, regardless of officer's subjective motivation, where defendant's truck was stopped at stop sign for an unusually long time before turning suddenly without signal and driving off at

an unreasonable speed). Even a minor traffic violation provides the necessary probable cause. United States v. Figueroa-Espana, 511 F.3d 696, 701 (7th Cir. 2007) (finding probable cause for traffic stop where defendant followed another vehicle "more closely than is reasonable and prudent" in violation of Indiana traffic code). The officer's subjective motivation for making the stop is irrelevant to the Fourth Amendment analysis. United States v. Hernandez-Rivas, 348 F.3d 595, 599 (7th Cir. 2003); see also Whren, 517 U.S. at 813.

Officers Bangert and Hodges premise their probable cause to stop Stanbridge on two traffic violations: failure to properly signal a left-hand turn, as observed by Officer Hodges alone, and failure to properly signal while pulling to a stop at the curb, as observed by both officers. The Illinois Vehicle Code provides in pertinent part:

> When signal required. (a) No person may turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in Section 11-801 or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person may so turn any vehicle without giving an appropriate signal in the manner hereinafter provided.

> (b) A signal of intention to turn right or left when required must be given continuously during not less than the last 100 feet traveled by the vehicle before turning within a business or residence district, and such signal must be given continuously during not less than the last 200 feet traveled by the vehicle before turning outside a business or residence district.
>
> \*\*\*
>
> (d) The electric turn signal device . . . must be used to indicate an intention to turn, change lanes or start from a parallel parked position . . . .

625 Ill. Comp. Stat. 5/11-804. The plain language of the statute makes clear that a left turn at an intersection, whether or not in a business or residential district, requires that the driver use his turn signal within no less than 100 feet of the intersection before making the turn. Because Officer Hodges saw that Stanbridge's turn signal was not being used at all while Stanbridge was in the middle of the intersection, making the turn, Stanbridge's turn was in violation of § 11-804, thereby providing probable cause for Officer Hodges to initiate the traffic stop.

Officer Hodges, however, was not driving the police car and did not initiate the traffic stop. Officer Bangert, as the driver, did, but Officer Bangert testified that he did not see Stanbridge's left turn without a proper signal. Moreover, both officers testified that

Officer Hodges did not tell Officer Bangert about Stanbridge's unsignaled left turn, and Officer Hodges testified that he had assumed that Officer Bangert saw the turn for himself.

Officer Bangert did, however, see Stanbridge pull to the right-hand curb while simultaneously using his electric turn signal, an action Officer Bangert believed violated the Illinois Vehicle Code § 11-804. Stanbridge's act of pulling to the curb while simultaneously signaling, instead of using the turn signal at least 100 feet before pulling to the curb, gave Officer Bangert probable cause to believe that a traffic violation had occurred and to initiate a traffic stop. See Whren, 517 U.S. at 809–10; Figueroa-Espana, 511 F.3d at 701.

Unfortunately, the plain language of § 11-804 does not indicate explicitly that pulling to a stop at the curb requires the use of a signal, nor does any other statute in the Illinois Vehicle Code. Subsection 11-804(a) does require "reasonable safety" before a vehicle "move[s] right or left upon a roadway," a description applicable to the act of pulling to the curb, or "turns" in one of the three manners provided in the subsection's first sentence. The second sentence of subsection 11-804(a) further requires an

"appropriate signal," as provided in subsection (b), when a motorist "so turn[s]." The language of subsection 11-804(a), therefore, presents some ambiguity as to whether a signal is required before a motorist does not <u>turn</u>, but rather "<u>move[s]</u> right or left upon a roadway." 625 Ill. Comp. Stat. 5/11-804(a) (emphasis added). Muddying matters further, § 11-804(d) requires a signal "to indicate an intention to . . . change lanes," but this language is also ambiguous as to whether the curb area is a "lane" to which a motorist changes when pulling to a stop at the curb. If the Illinois General Assembly had meant for the signal requirement to apply to a motorist pulling to a stop at the curb under § 11-804(d), it knew how to do so explicitly, as § 11-804(d) clearly requires the use of a turn signal before "start[ing] from a parallel parked position," another maneuver involving "mov[ing] right or left upon a roadway." The Illinois Vehicle Code, moreover, is silent as to whether the definition of a "lane" includes the curb area where vehicles typically stop rather than travel along the roadway. An examination of the plain language of § 11-804, then, does not clarify whether Stanbridge's act of pulling to a stop at the curb required a signal at least 100 feet in advance.

The Illinois Supreme Court has not had occasion to construe § 11-804 to determine whether moving "right or left upon a roadway" includes pulling to a stop at the curb, see § 11-804(a), or whether pulling to a stop at the curb constitutes "chang[ing] lanes." See § 11-804(d). The Illinois Third District Appellate Court, however, has summarily held that a defendant moving his vehicle to a stop at the shoulder on the side of the road without signaling provides police with probable cause to believe that a traffic violation had occurred under § 11-804(a). People v. Tramble, 980 N.E.2d 1254, 1257–58 (Ill. App. Ct. 2012); cf. United States v. Rowell, No. 06-CR-20053, 2007 WL 1206727, at *4–*5 (C.D. Ill. Apr. 24, 2007) (denying motion to suppress where defendant pulled to right-side curb after turning on left-turn signal in violation of § 11-804(d)). Furthermore, the Illinois Fourth District Appellate Court, whose jurisdiction includes the city of Quincy in Adams County, has also held that a defendant's failure to signal a change of lanes violates § 11-804(a) and provides probable cause for the arresting officer to initiate a valid traffic stop. People v. Reatherford, 802 N.E.2d 340, 348 (Ill. App. Ct. 2003); see also, e.g., United States v. Melendez, 561 F. App'x 541, 542 (7th Cir. 2014) (recognizing for purpose of

Anders motion that failure to signal change of lanes violates § 11-804(d), thereby providing probable cause to initiate valid traffic stop).

These cases are not dispositive, however, because each deciding court supported its conclusion that a vehicle's unsignaled move to the side of the road violated § 11-804 with scant analysis. Rowell is factually distinguishable, moreover, because the defendant in that case signaled left while pulling over to the right, whereas Stanbridge simultaneously signaled right and pulled over to the right-hand curb.

Moreover, Reatherford and Melendez shed little light on the applicability of § 11-804 to the act of pulling to a stop at the curb because those cases both concerned vehicles in moving traffic that changed lanes without signaling, an action clearly prohibited under § 11-804(d). In Reatherford, officers initiated a traffic stop after the defendant's vehicle was observed "chang[ing] lanes without signaling and weav[ing] across the centerline back and forth out of [its] lane" while traveling west on Interstate 72. 802 N.E.2d at 345. Melendez, similarly, involved a traffic stop after officers followed defendant's vehicle and observed defendant "switch lanes without

signaling." 651 F. App'x at 541–42. But in the present case, Defendant pulled his car to a stop in the curb area, while simultaneously signaling, rather than continuing in moving traffic. Moreover, the road on which Defendant traveled was not marked with lane markings. Nor does any Illinois or Seventh Circuit case directly address whether the curb area is a "lane" such that Stanbridge's act of pulling over is analogous to the lane changes in Reatherford and Melendez. But see People v. Marshall, No. 1-08-1242, 2011 WL 9548474, at *1 (Ill. App. Ct. Feb. 1, 2011) (describing the movement of defendant's car from "a regular lane of traffic" to the "right curb lane" to park in a no-parking zone before directing the trial court to allow the filing of a motion to suppress and to conduct a hearing on the motion).

Ultimately, however, the ambiguity of § 11-804 and its application to this case must be resolved in the Government's favor. The United States Supreme Court recently held that a police officer's reasonable mistake of law gives rise to reasonable suspicion that justifies a traffic stop under the Fourth Amendment. Heien v. North Carolina, 574 U.S. ---, 135 S. Ct. 530, 534 (2014) (finding reasonable officer's mistake of North Carolina law, which requires

"a stop lamp on the rear of the vehicle," when initiating traffic stop of motorist with one working and one faulty rear brake light). Following Heien, if Officer Bangert reasonably believed that Stanbridge violated § 11-804 when he pulled to a stop at the curb while simultaneously signaling, then Officer Bangert had probable cause to initiate a traffic stop.

This Court holds that Officer Bangert's belief that Stanbridge violated § 11-804 was reasonable, even if it were mistaken. As the preceding discussion shows, though the statute is unclear about the specific requirement of a signal before "mov[ing] right or left upon a roadway," the overall purpose of the statute is plainly to regulate the movement of vehicles and to provide notice of that movement to other motorists. See, e.g., People v. Russell, No. 2-11-1098, 2012 IL App (2d) 111098-U, ¶ 1–2 (Aug. 20, 2012) (reversing arrest for driving while revoked of motorist pulled over for failure to activate turn signal at least 100 feet before left turn because motorist had properly entered traffic only 50–75 feet from intersection and used turn signal for 18 seconds before turning, thereby fulfilling statutory purpose to provide notice to those around him). Moreover, no Illinois case law indicates that § 11-804

"a stop lamp on the rear of the vehicle," when initiating traffic stop of motorist with one working and one faulty rear brake light). Following Heien, if Officer Bangert reasonably believed that Stanbridge violated § 11-804 when he pulled to a stop at the curb while simultaneously signaling, then Officer Bangert had probable cause to initiate a traffic stop.

This Court holds that Officer Bangert's belief that Stanbridge violated § 11-804 was reasonable, even if it were mistaken. As the preceding discussion shows, though the statute is unclear about the specific requirement of a signal before "mov[ing] right or left upon a roadway," the overall purpose of the statute is plainly to regulate the movement of vehicles and to provide notice of that movement to other motorists. See, e.g., People v. Russell, No. 2-11-1098, 2012 IL App (2d) 111098-U, ¶ 1–2 (Aug. 20, 2012) (reversing arrest for driving while revoked of motorist pulled over for failure to activate turn signal at least 100 feet before left turn because motorist had properly entered traffic only 50–75 feet from intersection and used turn signal for 18 seconds before turning, thereby fulfilling statutory purpose to provide notice to those around him). Moreover, no Illinois case law indicates that § 11-804

does not apply to motorists like Stanbridge who pull to a stop at the curb while simultaneously signaling. Therefore, Officer Bangert's conclusion that Stanbridge's action violated § 11-804 was reasonable because Stanbridge did not give sufficient notice of his intended movement on the roadway by signaling at least 100 feet before moving. See Heien, 574 U.S. at ---, 135 S. Ct. at 534. Accordingly, Officer Bangert had probable cause to initiate the traffic stop.

Stanbridge has asked that the Court consider a case out of the Court of Appeals of Missouri, Western District, State v. Johnson. 148 S.W.3d 338 (Mo. Ct. App. 2004). In Johnson, police initiated a traffic stop after the defendant pulled to the left away from a stop at the curb without using his turn signal when no traffic was affected by his movement. Id. at 339. The police believed that this maneuver was a violation of a section of the Missouri Traffic Regulations that provided:

> No person shall stop or suddenly decrease the speed of or turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided herein.

Mo. Rev. Stat. § 304.019.1 (2010). The Court of Appeals of Missouri first distinguished the Missouri statute from other states' statutes, including specifically § 11-804, in that the Missouri statute did not explicitly require a signal when a vehicle starts from a parked position. Id. at 341; compare 625 Ill. Comp. Stat. 5/11-804(d) ("The electric turn signal device . . . must be used to indicate an intention to . . . start from a parallel parked position . . . ."). The court next noted that the Missouri statute appeared to regulate vehicle movement only when there was other traffic that may be affected. Id. at 342–43. The court further reasoned that the terminology of the Missouri statute appeared to "contemplate moving vehicles rather than a vehicle starting from a stopped position." Id. at 343. For these reasons, and because the court sought to construe the Missouri traffic statute narrowly, the court affirmed the trial court's grant of defendant's motion to suppress evidence resulting from the traffic stop. Id. at 344–45.

Defendant's reliance on Johnson, however, is misplaced: different state, different law, different facts, and different outcome. The Johnson court directly addressed the distinction between Missouri's § 304.019.1 and Illinois's § 11-804, and held that

Missouri's statute did not explicitly require a signal where Illinois's statute did. Moreover, unlike the defendant in Johnson, who pulled out into traffic from a parked position, Stanbridge began in traffic and pulled over to a stop at the curb. Because of these differences, Johnson is of limited persuasive weight.

In sum, if § 11-804 did apply and Stanbridge was required to signal at least 100 feet before pulling to a stop at the curb, his failure to do so was a violation of the Illinois Vehicle Code. If § 11-804 did not apply, Officer Bangert was reasonably mistaken in believing that it did. In either case, Officer Bangert had probable cause to initiate a valid traffic stop.

**B. Officers Bangert and Hodges did not unreasonably prolong the traffic stop.**

Having made the initial, valid traffic stop, Officers Bangert and Hodges were permitted to detain Stanbridge for long enough to accomplish the purpose of the stop. United States v. Muriel, 418 F.3d 720, 726 (7th Cir. 2005). During the stop, the officers were permitted to request identification and question the vehicle's occupants, including questions on subjects not related to the purpose of the stop. Id. The officers were also permitted to call for

a drug-sniffing dog during the stop so long as doing so did not unreasonably prolong the stop in waiting for the dog to arrive. See Illinois v. Caballes, 543 U.S. 405, 407–08 (2005). In fact, police officers need no articulable reason to call in a drug-sniffing dog, provided that doing so does not otherwise invade the subject's legitimate interest in privacy. Id.; see also United States v. Jacobsen, 466 U.S. 109, 123 (1984) (holding that any interest in possessing contraband cannot be deemed "legitimate," and thus government conduct that reveals only possession of contraband "compromises no legitimate privacy interest"). In the Seventh Circuit, moreover, traffic stops of as long as 50 minutes have been upheld as reasonable to accomplish police officers' investigative purposes. See, e.g., United States v. Martin, 422 F.3d 597, 601–02 (7th Cir. 2005) (finding reasonable in duration a traffic stop where police questioning leading to reasonable suspicion of criminal activity and investigation resulting in 50-minute delay before arrival of drug-sniffing dog). A positive alert from a drug-sniffing dog may then provide probable cause to search the car anywhere drugs might be found. See Florida v. Harris, 133 S. Ct. 1050 (2013) (reaffirming flexible, common-sense standard of probable cause in

determining reliability of drug-sniffing dog, whose alert provided probable cause to search vehicle); United States v. Place, 462 U.S. 696, 706–07 (1983) (establishing that dog sniff of luggage does not constitute Fourth Amendment search); United States v. Ross, 456 U.S. 798, 800 (1982) ("[P]olice officers . . . who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it . . . may conduct a probing search of compartments and containers within the vehicle whose contents are not in plain view [to an extent] as thorough as a magistrate could authorize in a warrant . . . .").

Here, Officers Bangert and Hodges called in the K9 unit during the traffic stop while they were writing a warning ticket for Stanbridge. The K9 unit arrived "within fifteen minutes of the initial stop." As shown by comparison to the valid 50-minute traffic stop in Martin, a traffic stop of fifteen minutes is not unreasonably prolonged. Stanbridge had no legitimate privacy interest in the contraband drugs on which the K9 unit's dog alerted. See Jacobsen, 466 U.S. at 123. The dog's alert therefore required no probable cause justification itself. Rather, the alert provided probable cause to search Stanbridge's car for drugs. Harris, 133 S.

Page **18** of **19**

Ct. 1050. Accordingly, Officers Bangert and Hodges were authorized, within the bounds of the Fourth Amendment and without Stanbridge's consent, to search the car. Therefore, Stanbridge's Motion to Suppress Evidence must be denied.

### III. CONCLUSION

For these reasons, Stanbridge's Motion to Suppress Evidence (d/e 9) is DENIED. The final pretrial conference in this case will take place as scheduled on Monday, April 6, 2015.

ENTER: February 3, 2015
FOR THE COURT:          s/ Sue E. Myerscough
                            SUE E. MYERSCOUGH
                          UNITED STATES DISTRICT JUDGE